## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brett Thomas Green,                                    Civ. No. 14-857 (ADM/BRT)

                    Plaintiff,

v.

Hearing Officer on report 452704; and          **REPORT AND**
Warden of Stillwater MCF, in their              **RECOMMENDATION**
individual capacities,[1]

                    Defendants.

Brett Thomas Green, MCF-Rush City, 7600 525th St., Rush City, MN 55069, *pro se* Plaintiff.

Margaret E. Jacot, Esq., Minnesota Attorney General's Office, counsel for Defendants.

BECKY R. THORSON, United States Magistrate Judge.

       Brett Thomas Green, a state inmate formerly incarcerated at the Minnesota

Correctional Facility in Stillwater, Minnesota, has filed a *pro se* civil rights suit under 42

U.S.C. § 1983. (*See* Doc. Nos. 1, 9.) In his amended complaint,[2] Green essentially sets

---

[1]       Although Green has not identified the Defendants by name, it appears that Michelle Smith is the Warden of the Minnesota Correctional Facility at Stillwater and that Michael Parks authored the relevant discipline hearing report. (*See* Doc. No. 14 at 1.)

[2]       The Court afforded Green an opportunity to file an amended complaint after concluding that his initial complaint failed to state a viable claim on which relief may be granted. (*See* Doc. No. 8.) Although Green's amended complaint clarifies his claims against the Defendants, it does not include many of the factual allegations contained in his original complaint. (*See* Doc. No. 1 at 4–5; Doc. No. 8 at 2–5.) Ordinarily, "an amended complaint supercedes an original complaint and renders the original complaint (Footnote Continued on Next Page)

forth three claims for relief after correctional officials found him guilty of starting a fire in his prison cell. First, Green alleges that he was denied procedural due process when he was placed in disciplinary segregation for 120 days and ordered to pay $150.00 in restitution as a result of the fire. (*See* Doc. No. 9, Am. Compl. at 2; Doc. No. 1, Compl. at 4–5.) Green maintains that he should have been afforded a "major" disciplinary hearing before an impartial three-member panel where he could call witnesses and review surveillance footage, rather than the "minor" hearing that he received.[3] (Doc. No. 9 at 3–4.) Second, Green alleges that the Defendants violated his due process rights when they failed to prevent the loss of his personal property in the fire. (*Id.* at 3–4.) Third and finally, Green asserts an Eighth Amendment failure-to-protect claim based on the second- and third-degree burns that he allegedly sustained while attempting to extinguish the fire. (*See id.* at 4–5.)

The Defendants have filed a partial motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, specifically seeking to dismiss Green's first due

---

(Footnote Continued from Previous Page)
without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). Nevertheless, because *pro se* complaints are to be liberally construed, and because Green's amended complaint does not introduce any new claims not advanced in his original complaint, this Court will read the two complaints together by assuming that Green intended to incorporate the factual allegations contained in his original complaint into his amended complaint.

[3]     Green indicates that he has not been able to acquire copies of relevant prison records, including the incident report, and that he needs a court order to do so. (*See* Doc. No. 9 at 1; Doc. No. 20 at 1.) That issue, however, is not properly before this Court at this time because Green has not formally moved to compel discovery pursuant to Fed. R. Civ. P. 37 or served a subpoena duces tecum.

process claim to the extent that it relies on his placement in disciplinary segregation and to dismiss his remaining claims in their entirety.[4] (Doc. No. 13, Defs.' Partial Mot. to Dismiss at 1; Doc. No. 14, Mem. in Supp. of Defs.' Partial Mot. to Dismiss at 1–2, 4–9.) For the reasons discussed below, this Court recommends that the Defendants' partial motion to dismiss be granted.

## I. BACKGROUND

According to Green, he was awakened at 4:00 a.m. sometime around March 25, 2012,[5] by an electrical fire that had started in his cell at the Minnesota Correctional Facility in Stillwater.[6] (*See* Doc. No. 9 at 3; Doc. No. 1 at 4.) The fire originated from a faulty electrical outlet that sparked and ignited Green's possessions, including his paperwork and a plastic bowl. (Doc. No. 1 at 4.) Green extinguished the fire using his hands and suffered second- and third-degree burns in the process. (*Id.*)

Green was unable to inform prison staff about the fire for forty-five minutes as there were no emergency buttons in his cell and prison staff only circulated on an hourly

---

[4]     The Defendants do not seek dismissal of Green's procedural due process claim to the extent that it relies on the order of restitution. (*See* Doc. No. 13 at 1; Doc. No. 14 at 2.) While they "do not concede that Green has adequately pleaded his restitution claim," the Defendants indicate that "documentation regarding the incident and [the] hearing procedures would assist the Court in reviewing this claim" and, as such, that they intend to address that claim in a later motion for summary judgment. (Doc. No. 14 at 2 n.1.)

[5]     Green does not provide an exact date; however, he does allege that an incident report was created on March 25, 2012. (Doc. No. 1 at 6.)

[6]     Because the Defendants have moved for partial dismissal under Rule 12(b)(6), this Court assumes the truth of Green's factual allegations and draws all reasonable inferences in his favor. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 896 (8th Cir. 2014).

basis. (*Id.* at 5.) Green was later charged by prison officials with arson and, after a

"minor" disciplinary hearing, he was found guilty on that charge, sentenced to 120 days

of disciplinary segregation, ordered to pay $150.00 in restitution for the damage caused

by the fire, and received a significantly higher safety classification. (*See* Doc. No. 1 at 4–

5; Doc. No. 9 at 3.)

## II.  DISCUSSION

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is sufficiently plausible where it

"allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. Although *pro se* complaints are liberally

construed, "they still must allege sufficient facts to support the claims advanced." *Stone

v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

### A.    Disciplinary Segregation

Green asserts, in relevant part, that his due process rights were violated when he

was placed in disciplinary segregation for 120 days after he was found guilty of arson.

(Doc. No. 9 at 2–4.) Green alleges that the prison disciplinary proceedings were

inadequate because there was no evidence of his guilt and because he only received a

"minor" hearing, rather than a "major" hearing where he could call witnesses, review the

surveillance footage of the fire, and have his guilt decided by an impartial three-member panel.[7] (*Id.* at 3–4.)

Procedural due process constrains government decisions "which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Thus, in order to state a procedural due process claim, a plaintiff must show (1) the existence of a constitutionally protected liberty or property interest, and (2) that the defendants deprived him of that interest without constitutionally adequate process. *Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011); *see also Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (explaining that a "procedural due process claim turns on (1) whether the state actor's decision impacted a protected liberty or property interest, and if so, (2) what process was constitutionally 'due'"). Absent a protected liberty or property interest, an individual is not constitutionally entitled to any

---

[7]     Green also suggests that his placement in disciplinary segregation violated the Eighth Amendment's ban on cruel and unusual punishment. (*See* Doc. No. 9 at 2, 4.) However, such confinement, even for substantially longer periods of time, fails to implicate the Eighth Amendment. *See Brown v. Nix*, 33 F.3d 951, 952, 955 (8th Cir. 1994) (holding that nine years of disciplinary segregation did not offend the Eighth Amendment); *see also Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (concluding that twenty-six months in segregation, while a "long time," was not "sufficiently serious to establish an Eighth Amendment violation"). Additionally, "[a] prison official violates the Eighth Amendment when two conditions are met: 1) the deprivation alleged is sufficiently serious — the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities; and 2) the prison official acts with 'deliberate indifference' — he knows of and disregards an excessive risk to inmate health and safety." *Brown*, 33 F.3d at 955. Because Green has not alleged any facts that would support a finding on either prong, he has failed to state a plausible Eighth Amendment claim regarding his placement in disciplinary segregation.

process. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (explaining that courts do not consider what process is due unless the plaintiff has a protected liberty or property interest); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement . . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive right.").

To the extent that Green's procedural due process claim relies on his placement in disciplinary segregation for 120 days, he has failed to make a threshold showing that he was deprived of a protected liberty interest. *See Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) ("A due process claim is cognizable only if there is a recognized liberty or property interest at stake."). Prisoners do not have a constitutionally protected liberty interest in the conditions of their confinement unless those conditions impose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Absent extraordinary length or unusual restrictions, placement in disciplinary or administrative segregation, even without cause, does not constitute an atypical and significant hardship sufficient to implicate due process protections. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."); *Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) ("We have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*.").

6

By itself, Green's placement in disciplinary segregation for 120 days does not

constitute an "atypical and significant hardship" sufficient to give rise to a liberty interest

protected by constitutional due process. *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir.

2010) (holding that nine months of administrative segregation was not an atypical and

significant hardship); *Hemphill v. Delo*, 124 F.3d 208 (table), 1997 WL 581079, at *2

(8th Cir. 1997) (holding that "four days locked in his housing unit, thirty days in

disciplinary segregation, and approximately 290 days in administrative segregation" does

not "constitute an atypical and significant hardship when compared to the burdens of

ordinary prison life") (quotation omitted); *Moorman v. Thalacker*, 83 F.3d 970, 971, 973

(8th Cir. 1996) (holding that "15 days of the highest level of disciplinary detention, and

107 days in progressively less restricted disciplinary detention" did not constitute a

"dramatic departure from the ordinary incidents of prison life"); *King v. Dingle*, 702 F.

Supp. 2d 1049, 1076 (D. Minn. 2010) (finding that six months of segregation was not an

atypical and significant hardship). And Green has not identified any particular conditions

of his segregation, as opposed to its mere imposition and length, that could support a

finding that he was subjected to an atypical and significant hardship. *See Portley-El*, 288

F.3d at 1065 ("An inmate who makes a due process challenge to his segregated

confinement must make a threshold showing that the deprivation of which he complains

imposed an atypical and significant hardship.") (quotation omitted); *King*, 702 F. Supp.

2d at 1076 (noting that particular conditions imposed in relation to segregation may

implicate due process even though the imposition and length of that segregation do not).

Because Green's 120-day stay in disciplinary segregation does not constitute an "atypical and significant hardship" sufficient to give rise to a protected liberty interest, he was not constitutionally entitled to any process before being placed in such segregation.[8] *See Ragan*, 113 F.3d at 876 (explaining that only where a constitutionally protected liberty or property interest is at stake are inmates "entitled to due process before being disciplined," including "an opportunity to present evidence in their defense" and "a decision supported by some evidence in the record"); *King*, 702 F. Supp. 2d at 1077 n.14 ("Since we have concluded that King does not have a protectible liberty interest, which would implicate Due Process, we need not address whether or not the proceedings satisfied procedural due process requirements.") Green has therefore failed to state a plausible claim that his due process rights were violated when he was placed in disciplinary segregation. His claim should be dismissed insofar as it relies on his placement in segregation.

## B.  Loss of Property

Green next alleges that the Defendants violated his due process rights when they failed to prevent the destruction of his personal property in the electrical fire. (Doc. No. 9

---

[8]    To the extent Green suggests that he was entitled to a "major" hearing as a matter of either state law or prison policies (*see* Doc. No. 1 at 5; Doc. No. 9 at 3), it is well-established that a prisoner has no constitutionally protected liberty in having prison officials comply with such laws or policies. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("If Kennedy has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined.").

at 3–4.) He contends that the warden of the correctional facility at Stillwater is liable for the loss of that property because she is legally responsible for the maintenance of the prison, including electrical outlets, and that she failed to carry out "mandated checks."[9] (*Id.* at 4–5.)

The Due Process Clause applies only to "*deliberate* decisions of government officials to deprive a person of life, liberty, or property," not to negligent acts that unintentionally cause such loss. *Daniels v. Williams*, 474 U.S. 327, 328, 331 (1986); *see also Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) ("[N]egligent conduct cannot by definition establish the affirmative abuse of power necessary to constitute a due process deprivation.") (quotation omitted). Green, however, has not alleged any facts that would plausibly suggest that the electrical fire that occurred in his cell was the result of any deliberate actions undertaken by the Defendants. At most, his allegations suggest that the Defendants were negligent in failing to discover and repair the faulty electrical outlet in his cell. *See Daniels*, 474 U.S. at 333 (explaining that the protections of the Due Process Clause are not "triggered by lack of due care by prison officials" and that the

---

[9]     It is unclear whether Green is also alleging that the loss of his property violated the Eighth Amendment. (*See* Doc. No. 9 at 4.) To the extent that he is attempting to raise such a claim, it necessarily fails because the Eighth Amendment does not require prison officials to protect an inmate's personal property. *See Hunter v. Sherman*, 49 F. App'x 611, 612 (6th Cir. 2002) (explaining that a prisoner "cannot state a claim under the Eighth Amendment for deliberate indifference to the security of his property"); *Wa-Gino v. Ariz. Dep't of Corr.*, No. 95-16931, 1996 WL 467701, at *1 (9th Cir. Aug. 16, 1996) (same); *Najjar v. Caraway*, No. CIV06-403, 2006 WL 1517768, at *1 (D. Minn. May 26, 2006) ("A prison official's failure to protect an inmate's personal property does not constitute deliberate indifference to the inmate's health or safety as contemplated by the Eighth Amendment.").

Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States") (quotation omitted). Because Green has not shown that the loss of his personal property was the result of intentional or deliberate action, he has failed to state a plausible due process claim.[10]

## C.    Failure to Protect

Finally, Green claims that the Defendants violated his Eighth Amendment rights by failing to protect him from the electrical fire, which allegedly resulted in second- and third-degree burns to his right hand. (Doc. No. 9 at 5; *see also* Doc. No.1 at 4.) To state a viable Eighth Amendment claim, Green must show that (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) the Defendants acted with "deliberate indifference" by knowingly disregarding that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Negligence is not enough; instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835, 837; *see also Davis v. Oregon Cnty., Mo.*, 607 F.3d 543, 548 (8th Cir. 2010) ("An

---

[10]    Even if Green had alleged sufficient facts to establish the requisite deliberateness, his due process claim would still fail because there is no indication that state law does not provide adequate post-deprivation remedies for the intentional deprivation of personal property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); *see also Albright v. Oliver*, 510 U.S. 266, 284 (1994) ("[O]ur precedents make clear that a state actor's random and unauthorized deprivation . . . cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy.").

official's negligence alone is insufficient . . . because the official must recklessly disregard a known, excessive risk of serious harm to the inmate.") (quotation omitted). A prison official's "failure to alleviate a significant risk that he should have perceived but did not" does not amount to deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. at 838.

While Green contends that the Defendants exhibited "deliberate indifference" to the danger posed by the faulty electrical outlet in his cell, he has not alleged any facts indicating that the Defendants were aware of that danger and knowingly disregarded it. (*See* Doc. No. 9 at 5); *Iqbal*, 556 U.S. at 678 (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief). He alleges only that prison officials, particularly the warden, have "a legal responsibility to maintain facility outlets," that there are "mandated checks they are suppose[d] to do," and that "they are responsible for faulty equipment with which they equipped the prison." (Doc. No. 9 at 5.) Those allegations in no way suggest that either of the Defendants actually knew about the allegedly faulty electrical outlet in Green's cell. At most, Green's allegations speak to possible negligence—that the Defendants "should have perceived" the problem—which cannot serve as basis for meeting the Eighth Amendment's deliberate-indifference standard. *See Farmer*, 511 U.S. at 838. Nor has Green alleged that the particular Defendants named in this suit, as opposed to prison officials in general, were personally involved in the alleged Eighth Amendment violation through their own individual actions. *See Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) ("To state a claim under § 1983, a plaintiff must plead that

11

each Government-official defendant, *through the official's own individual actions*, has

violated the Constitution.") (quotation omitted) (emphasis added); *see also Beaulieu v.*

*Ludeman*, 690 F.3d 1017, 1030 (8th Cir. 2012) ("Supervisors cannot be held vicariously

liable under § 1983 for the actions of a subordinate.") (quotation and ellipsis omitted);

*Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general

responsibility for supervising the operations of a prison is insufficient to establish

personal involvement.") For these two reasons, Green has failed to state a plausible

Eighth Amendment claim.

## CONCLUSION

In sum, Green's amended complaint fails to state a viable claim that he was denied

due process when he was placed in disciplinary segregation and lost his personal

property, or that his Eighth Amendment rights were violated when prison officials failed

to prevent the electrical fire in his cell. This Court therefore recommends that the

Defendants' partial motion to dismiss be granted and, accordingly, that all of Green's

claims be dismissed except his procedural due process claim based on being ordered to

pay restitution for the damage caused by the fire.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT

IS HEREBY RECOMMENDED** that:

1.    Defendants' partial motion to dismiss (Doc. No. 13) be **GRANTED**;

2.    The following claims be **DISMISSED WITH PREJUDICE** for failure to

state a claim for relief: (a) Plaintiff's procedural due process claim insofar as it relates to

his placement in disciplinary segregation; (b) Plaintiff's due process claim relating to the

loss of his personal property; and (c) Plaintiff's Eighth Amendment failure-to-protect

claim. The only claim that would remain is the Plaintiff's claim that his procedural due

process rights were violated when he was required by prison officials to pay restitution;

      3.      The Clerk of Court be directed to change the Defendant identified as

"Warden of Stillwater MCF" to "Warden Michelle Smith" and the Defendant identified

as "Hearing Officer on report #452704" to "Hearing Officer Michael Parks."


Date: April 28, 2015

s/ Becky R. Thorson
_____
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 12, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3,500 words. A district judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Eighth Circuit Court of Appeals.